**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | | |
|---|---|---|
| ERIC A. SUMTER, #278658, | ) | Civil Action No.: 4:16-00739-HMH-TER |
| | ) | |
| Petitioner | ) | |
| | ) | |
| | ) | **Report and Recommendation** |
| v. | ) | |
| | ) | |
| WARDEN, LIEBER CORRECTIONAL , INSTITUTION, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner, Eric A. Sumter, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on March 7, 2016. (Doc. #1). Respondent filed a return and motion for summary judgment on July 14, 2016. (Docs. # 23 and # 24). As the Petitioner is proceeding pro se, the undersigned issued an order filed July 15, 2016, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. (Doc. #25). On August 31, 2016, Petitioner filed a traverse which the court construes as Petitioner's response to Respondent's motion for summary judgment. (Doc. # 33). In the traverse, Petitioner attempts to raise "amended claims"[2] and  generally reasserts claims raised in his petition.

---

[1]This habeas corpus case was automatically referred to he undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 (B)(2)(c), DSC.  Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

[2] Petitioner cannot raise new claims in a response to the motion for summary judgment. See, e.g., Jones v. McFadden, No. 814-CV-04556-RMG-JDA, 2016 WL 825394, at *14 (D.S.C. Jan. 15, 2016), report and recommendation adopted, No. 8: 14-CV-4556-RMG, 2016 WL 827756 (D.S.C. Mar. 2, 2016) ("To the extent that

# I. <u>BACKGROUND</u>

## A. <u>Procedural History</u>

Petitioner has not disputed the procedural history outlined in Respondent's motion for summary judgment. Therefore, the undersigned will set out the undisputed procedural history, in part, as set forth by Respondent.

Petitioner is currently incarcerated in Lieber Correctional Institution in Ridgeville, South Carolina pursuant to Orders of Commitment from the Clerk of Court for Charleston County. The Charleston County Grand Jury indicted Petitioner during the October 2008 term for trafficking in cocaine (2010-GS-10-7492). Petitioner was represented by retained counsel William L. Runyon, Jr., Esquire. Assistant Solicitor Chad Simpson and Assistant Solicitor Adam Yount of the Ninth Judicial Circuit Solicitor's Office appeared on behalf of the state. Petitioner's jury trial began October 18, 2010, before the Honorable Kristi L. Harrington. At the conclusion of the trial, the jury found Petitioner guilty as charged. On October 19, 2010, Judge Harrington sentenced Petitioner to a twenty-five year term of imprisonment and imposed a fine of $50,000.00.

## B. <u>Direct Appeal</u>

A timely Notice of Appeal was served on behalf of Petitioner, and an appeal was perfected. On appeal, Petitioner was represented by Susan B. Hackett, Assistant Appellant

---

Petitioner is attempting to raise new arguments in his response in opposition, new matters cannot be raised in a response in opposition to a motion for summary judgment,...and the Court will not address these arguments.") (citing <u>Temple v. Oconee County</u>, C/A No. 6:13–144–JFA–KFM, 2014 WL 4417702, at *13 (D.S.C. Sept. 8, 2014); <u>White v. Roche Biomedical Labs.</u>, 807 F. Supp. 1212, 1216 (D.S.C. 1992)).

Defender of the South Carolina Commission on Indigent Defense, Division of Appellate Defense. On December 30, 2011, counsel for Petitioner filed an Anders[3] brief and a petition to be relieved as counsel. The Anders brief presented the following issue:

> Did the trial court err in refusing to charge the jury on possession with intent to distribute cocaine as a lesser included offense of the indicted offense of trafficking cocaine in light of the police officer's testimony that over 100 grams could be a month supply for a user?

(Doc. # 23-5 at 4).

Thereafter, Petitioner filed a pro se Anders brief, in which he argued the following:

I.    Whether the judge erred in not issuing a curative instruction where the State elicited hearsay testimony from a State witness concerning an informant?

II.   Whether the judge erred in allowing an expert opinion from a witness not previously qualified as an expert witness prior to testifying?

III.  Whether the judge erred in qualifying a witness as an expert witness?

IV.   Whether the judge abused her discretion in admitting evidence against Appellant?

V.    Whether the judge abused her discretion in allowing testifying co-defendant's counsel to sit in close proximity and during and bolstering her testimony?

(Doc. # 23-6 at 6.)

On October 10, 2012, the South Carolina Court of Appeals, in an unpublished opinion, affirmed Petitioner's conviction, dismissed the appeal, and granted appellate counsel's petition to be relieved. The remittitur was issued on October 26, 2012.

---

[3] Anders v. California, 386 U.S. 738 (1967).

3

## C. **PCR**

On January 3, 2013, Petitioner filed a pro se application for post-conviction relief

(PCR). (Doc. # 23-2 at 92-99). In the PCR application, Petitioner argued that he was denied

his Sixth and Fourteenth Amendments rights to the effective assistance of counsel insofar as:

10(A) Trial counsel failed to challenge the sufficiency of the subject indictment prior to taking of evidence in contravention of the Fifth Amendment and South Carolina Law.

11(a) Trial counsel failed to timely object to the sufficiency of the indictment which did not specifically allege the essential element of conspiracy with co-defendant Tiffany Deas, who was the person in possession of the drugs.

10(b) Trial counsel failed to move for dismissal or directed verdict where Applicant was not in possession of the drugs for which he was arrested and indicted.

11(b) Applicant was not in possession of drugs and was not charged with conspiracy as an element of the offense and counsel failed to move for directed verdict upon these deficiencies.

10(c) Trial counsel failed to object to the solicitor leading a witness.

11(c) Trial counsel did not object to the Solicitor leading the co-defendant state witness (Deas) during direct testimony to justify her knowledge of and presence at a known drug dealer's apartment where Deas was the person in possession of the drugs.

10(d) Trial counsel failed to object to the Solicitor testifying for, vouching for, and pitting witnesses.

11(d) In opening statements, the Solicitor testified as to what witnesses would say specifically; vouched for the credibility of the state's witness Tiffany Deas; and pitted the future testimony of Deas against the anticipated absence of Applicant's testimony, and trial counsel failed to object.

4

10(e)   Trial counsel failed to object to the solicitor eliciting testimony regarding alleged prior bad acts of Applicant.

11(e)   During direct examination of state witness Tiffany Deas, the Solicitor elicited testimony that implied Applicant was previously engaged in drug trafficking, which was not properly before the jury, and counsel failed to object.

10(f)   Trial counsel failed to object to the Solicitor bolstering witness testimony.

11(f)   During closing arguments the Solicitor bolstered the testimony of Tiffany Deas that the drugs she had in her possession were not hers, but the Applicant's; and counsel failed to object.

10(g)   Trial counsel conceded the guilt of Applicant during trial thus depriving him of representation.

11(g)   During his closing argument[,] trial counsel conceded the guilt of Applicant to the jury when he told the jury Applicant was "just some wretched soul who had some cocaine," which negated Applicant's defense and deprived him of a fair trial.

10(h)   Trial counsel failed to object or move for a directed verdict where essential elements of the state's case were not proven.

11(h)   Trial counsel did not object or move for directed verdict concerning the essential elements of actual or constructive possession not being shown.

(Doc. 23-2 at 95-97).

The State filed its Return on November 1, 2013, and requested an evidentiary hearing.

An evidentiary hearing was held on May 20, 2014, at the Charleston County Courthouse before the Honorable Deadra L. Jefferson. (Doc.# 23-2 at 107-158). Charles T. Brooks, III, Esquire represented Petitioner and Ashleigh R. Wilson, Esquire of the South Carolina Attorney General's Office represented Respondent.

Petitioner was present at the hearing and testified on his own behalf. William Runyon, Jr., Petitioner's trial counsel, also testified at the hearing. Judge Jefferson denied the PCR application and filed her order of dismissal on July 16, 2014. (Doc.# 23-2 at 160-177).

## D.  PCR Appeal

On July 18, 2014, Petitioner filed an appeal from the dismissal of his PCR application. (Doc. # 23-9 at 1). Tiffany L. Butler, Appellate Defender of the South Carolina Commission on Indigent Defense, Division of Appellate Defense represented Petitioner on this appeal and filed a petition for writ of certiorari on his behalf raising the following issue:

> Whether trial counsel was ineffective for telling the jury in closing argument that Petitioner "bought some drugs from a big-time place," where Petitioner did not give counsel permission to concede that Petitioner possessed the drugs and Petitioner's defense at trial was that the drugs belonged to his co-defendant, Tiffany Deas?

(Doc. #23-10 at 3). The State filed a Return on July 1, 2015. (Doc. # 23-11).

Petitioner's PCR action concluded upon the Supreme Court of South Carolina denying the petition for writ of certiorari on October 8, 2015, and issuing its remittitur on October 26, 2015. (Docs. # 23-12 and 23-13).

## II. HABEAS ALLEGATIONS

On March 7, 2016, Petitioner filed a petition for habeas corpus relief. (Doc. # 1). Petitioner raised the following allegations in his petitioner, quoted verbatim:

> GROUND ONE    Trial counsel was ineffective for telling the jury in

6

closing arguments that petitioner bought some drugs from a Big Time Place, where petitioner did not give counsel permission to concede that petitioner possessed the drugs and petitioners defense at trial was that the drugs belonged to his codefendant Tiffany Deas.

Supporting Facts:    Following Post Conviction Relief at pg. 16 of P.C.R. order the PCR court ruled trial counsel did not concede the applicant guilt at trial. This is <u>FLATLY</u> contradicted by objective view of closing arguments. This, pur. to 2254 (d)2 was clearly a unreasonable determination of the <u>FACTS</u> based upon the lower court record at trial page 171 line 22 -173 1.6.

"they gave you two people, two wretched people, **who bought some drugs from a big time place.** And now they want the penalty and the verdict of guilty of that. . . from [an] objective point of view clearly, counsel made a <u>cogent</u> factual admission of guilt of his client-objectively in clear unreasonable application of U.S. Supreme Court precedent <u>Florida v. Nixon</u>, [see attached exhibit(l) appellate brief incorporated herein by reference]

In <u>Florida v. Nixon</u> supra, our U.S. Supreme Court made a clerk statement of law. A criminal defendant has the <u>ultimate authority</u> to determine whether to waive a jury and admit guilt. A attorney <u>Must</u> consult with the defendant and obtain the defendant consent <u>Before</u> conceding guilt. Id.

And the PCR records is <u>void</u> of any evidence that petitioner gave this consent. . . . thus, the writ must issue, as a violation pur. to <u>Florida v. Nixon</u> supra, has been shown, by clear and convincing evidence.

GROUND TWO:    <u>Martinez Issues(s)</u>

To establish a legal basis for Habeas Corpus pursuant to <u>Martinez v. Ryan</u>, 132 S.ct 1309 (2012) the following issues were "procedurally

7

defaulted" **by PCR counsel** at petitioner's <u>first</u> opportunity to obtain appellate review of his Sixth Amendment right to effective assistance of counsel and are raised for the <u>First Time</u> on <u>Habeas</u> review, under <u>Martinez v. Ryan</u>.

Supporting Facts:    A.) Trial counsel failed to argue state pursuant to <u>Banks v. Dretke</u> 540 U.S. 668 (2005) the state committed Brady violations by

> 1.) <u>Not</u> disclosing the name of the information who would establish this residence was a drug location (and his ongoing favorable treatment by state (SCRE 608(c)

> 2.)<u>The</u> deal Ms. Tiffany Deas had to testify where she received 6 months <u>immediately after trial</u>. This is the states only witness to convict petitioner, a lady who caught red handed w/ 100 (+) grams of cocaine, first claimed the drugs, until she was threatened by police, and following trial her case is reduced to possession and given <u>6 months</u>. This was vital impeachment facts and this is circumstantial evidence of a deal. based upon <u>common sense</u> 25 years reduced to 6 months. To withhold, lie and concealed the deal made to Tiffany Deas is gross prosecutorial misconduct comparable to <u>Banks v. Dretke</u> (supra) Riddle v. Ozmint 631 SE.2D 70 (2006) PCR counsel provided gross ineffective assistance of counsel for failing to raise issue and investigate. He did not even question the state prosecutor whether (i.e.) he gave her more lenient treatment based on her favorable testimony. After trial, <u>Post-Hoc</u>. Good ole boy off the record prosecutorial misconduct under <u>Banks v. Dretke</u> (e.g.). He could have called her attorney who sat with her during testimony counsel abandoned petitioner on the <u>Brady</u> violations IAC/conformation Issue.

8

3.) Trial counsel <u>failed</u> to enter a contemporaneous curative instruction and to strike the record when trial court <u>sustained</u> the <u>Crawford v. Washington</u> 541 U.S. 35 (2004) objection to hearsay, that a <u>unnamed</u> confidential informant stated this residence was a drug location. Placing petitioner in view as a drug operation with no opportunity for cross examination. *No other evidence existed this was a drug location. A spurious inference with no evidentiary support. Based on conduct of PCR counsel and the <u>Martinez</u> procedural default Rule these (3) ineffective assistance of counsel issues should be allowed to be litigated at [an] evidentiary hearing in federal court. (FN1) As <u>error</u> and <u>prejudice</u> occurred and counsel must be appointed. [see attached brief as exhibit III]

(Petition) (errors in original).

### III. STANDARD FOR SUMMARY JUDGMENT

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. <u>Celotex</u>, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute

for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves).  Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with  . . . affidavits, if any."  Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86

10

(4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV. STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

Thus, a writ may be granted if a state court "identifies the correct principle from [the Supreme] Court's decisions but unreasonably applies that principle of law" to the facts of the case. Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (citing Williams v. Taylor, 529 U.S. 362, 413 (2000)). However, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." Id. "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's

adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004). Further, factual findings "made by a State court shall be presumed to be correct," and a Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## V. PROCEDURAL BAR

The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

. . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

. . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, 477 U.S. 533 (quoting Wainwright v. Sykes, 433 U.S. at 84 (1977)).

See also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas Petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a Petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S.478, 496 (1986).

## VI.  ANALYSIS

## A. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

13

In Grounds One and Two, Petitioner presents issues of ineffective assistance of counsel. As such, the law with regard to ineffective assistance of counsel will be set forth and each issue subsequently addressed separately.

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); see Williams v. Taylor, 529 U.S. at 398.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for the ineffective assistance of counsel. First, Petitioner must show that his counsel committed error. If an error can be shown, then the second factor that the court must consider is whether the commission of error caused prejudice to the defendant.

To meet the first factor, "[t]he defendant must show that counsel's performance fell

below an objective standard of reasonableness." <u>Strickland v. Washington</u>, 466 U.S. at 688.

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." <u>Turner v. Bass</u>, 753 F.2d 342, 348 (4th Cir.1985) (quoting <u>Strickland v. Washington</u>, reversed on other grounds, 476 U.S. 28 (1986)). To meet the second factor, a complaining defendant must show that he was prejudiced before being entitled to reversal. <u>Strickland</u> requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, that the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

<u>Strickland v. Washington</u>, 466 U.S at 694.


## B. GROUND ONE

In Ground One, Petitioner argues trial counsel was ineffective for conceding guilt in remarks made during closing argument. Petitioner further argues that these remarks were made without Petitioner's permission and were an "unreasonable application of U.S. Supreme Court precedent as set forth in <u>Florida v. Nixon</u>, 543 U.S. 175 (2004)[4]." In moving for summary judgment, Respondent contends that the state court's rejection of this claim was

---

[4] Petitioner's reliance on <u>Florida v. Nixon</u> is misplaced. First, <u>Florida v. Nixon</u> was a death penalty case and did not announce a rule of law applicable to non-death penalty cases. <u>Bergerud v. Falk</u>, 2015 WL 5770946 (D. Co., October 2, 2015). In <u>Florida v. Nixon</u>, defense counsel made a strategic choice to concede defendant's guilt in an effort to persuade the jurors to sentence defendant to a life imprisonment sentence as opposed to a death sentence. <u>Id.</u> at 181. On appeal, defendant in that case, argued that counsel's strategy to concede his guilt without his consent rendered counsel's performance deficient. <u>See id.</u> at 187. The United States Supreme Court disagreed and found that counsel's strategy was reasonable under the <u>Strickland</u> standard. <u>Id.</u> at 192. Therefore, even assuming *arguendo* that <u>Florida v. Nixon</u> applied to non-death penalty cases, it does not support Petitioner's position under the facts present in this case.

15

neither "contrary to" nor did it involve an "unreasonable application of" clearly established United States Supreme Court precedent under § 2254(d)(1). (Doc. #23 at 15). In response to Respondent's motion for summary judgment, Petitioner gives an abbreviated reiteration of the argument presented in his original petition and memorandum in support. (Doc. #33).

At the PCR hearing, Petitioner testified that he was prejudiced by trial counsel's remarks and deprived of representation. (Doc. # 23-2 at 122; Tr. 325). Respondent submits trial counsel's comments were not a concession that Petitioner was guilty of trafficking in cocaine, but rather trial strategy, based on the evidence at trial, to give the jury an alternative to finding Petitioner guilty of trafficking. Respondent asserts that Petitioner has not shown that trial counsel was deficient in his choice of trial tactics and that there is no indication that Petitioner disagreed with trial counsel's strategy. This issue was raised and ruled upon by the PCR court and raised in the petition for a writ of certiorari.

The remarks in closing argument that Petitioner is complaining about are as follows:

> "[T]hey gave you two people, two wretched people, who bought some drugs from a big time place. And now they want the penalty and the verdict of guilty of that . . . "

(Doc.# 23-2 at 61).

Respondent submits that Petitioner has taken trial counsel's closing remarks out of context and misunderstands the point that trial counsel was trying to make to the jury. In support of this assertion, Respondent provides the court with the context in which trial counsel argued these remarks. In closing argument trial counsel argued inter alia that:

> You know, I've been at this for forty-three years and have never

16

heard the State of South Carolina refer to the constitutional process as a game. That's what this is, a constitutional process, and for the State to say it's a game, you know, I don't know. I'm kind of slow.

For a number of years we had a farm down in Colleton County, and on that farm we had horses. And it took me twenty-one years to figure out that something that ate while I slept was not an investment. And so when the State got up here and said in their opening argument to you, got a contract with you, we're going to show you about some big-time stuff here, promised you that -- and what did they do? They gave you two people, two wretched people, who bought some drugs from a big-time place and now they want the penalty and the verdict of guilty of that and that the problem of this is all you're going to have to decide is trafficking or nothing, you know.

And when he said, I'm going to stop, was he talking about stopping[sic] -- did he say stopping distributing drugs? Or is he talking about, I'm going to stop using cocaine? The implication -- the problem is you've got to decide that. That's your job.

And, remember, they had Detective Euper qualified as a witness on local drug trade. What is the sale quantity? About 3.4 grams. I mean, what was purchased was a twenty-day supply for a person who uses. A twenty-day supply. What their expert said.

Now, I don't know what you're going to make of this. You know, Mr. Simpson said, well, Tiffany's just a poor misguided person and she's just being cooperative with her boyfriend and all that sort of stuff. But then what happened? When the blue lights came on, like Saul on the road to Damascus, she was struck with the bright light of, I'll put it in my crotch. Okay? That's what she said.

The problem with it -- deciding what to do with these cases -- and it's a tough job, by the way, is that you have to take all these things -- and the judge is going to tell you if I say anything about the law that is different from what Her Honor tells you, by all means you take what she says. But you decide the facts.

And are the facts, just because the quantity is good enough, for you to determine that he should be convicted of trafficking?

Remember their promise to you. They promised in opening argument, we're going to show you how we go after the big people; And what have they got? They've got two people in a red car, stopped on the side of the highway, and who went to that apartment one time.

Remember they had the surveillance or what-have-you? One time. And, unfortunately, you're not going to be given the choice of other charges that could fall in this case. You're only going to have to decide the one charge of trafficking. And it's not a game. This is a proceeding with consequences. And it means something. It means something under the constitution.

(Doc. # 23-3 at 265-267).

Respondent asserts that when trial counsel's remarks are read in context, they do not concede

Petitioner's guilt to a crime for which the jury could convict him.

Trial counsel testified at the PCR hearing regarding the issue of whether or not he

conceded Petitioner's guilt in his closing argument as follows:

… [I]f you read my closing statement, one of the things that I was -- see, here's the problem. The case was one of trafficking. They presented one of their officers. And the Courts -- with all due respect to the bench, the judges let them present these officers as, quote, experts on drug trade. And so I was able to elicit the testimony on cross-examination, I believe, from the officer, that the drugs found might have been sufficient for the trafficking offense but basically they were -- there was also a smaller enough quantity for someone who is a user. So I did not think arguing that if you want to find that he was in possession of these drugs, that it was for his own use, and it was possession and not trafficking, and you folks on the jury are only concerned with one thing, and that is trafficking, and if you find that he's guilty of something less than that, that's not before you, you have to find him not guilty. So, in a manner of conceding that, I guess you could say I conceded that particular point.

18

(Doc. # 23-2 at 143-144).

The PCR held the following with respect to this issue, quoted verbatim:

### Conceding Guilt in Closing Argument

The Applicant alleges Counsel was ineffective for conceding the Applicant's guilt at trial during closing argument. This Court finds Counsel was not deficient and did not concede the Applicant's guilt at trial. This Court finds Counsel's statements during closing were not a concession of guilt, but an attempt by Counsel to minimize the deficits in the Applicant's defense and argue an alternate finding if the jury concluded that the State failed to meet its burden of proof on the Trafficking offense. (Tr. 172:3-7; 173: 1-4). Counsel provided credible testimony that his strategy was to argue to the jury that they should not find the Applicant guilty of trafficking solely based on the quantity of drugs found. Counsel argued to the jury that if they believed the State met their burden of proof as to actual or constructive possession that the Applicant did not intend to traffic the drugs and the quantity could have been for personal use. (Tr. 172:8-12; 175:9-25; 175:1-6). This Court finds Counsel's strategy and argument was valid in light of testimony the defense elicited from Officer Euper on cross-examination that 100 grams could be one month's supply of cocaine for one person. (Tr. 73:10-13). This Court further finds Counsel's argument was an attempt to provide the jury with an alternative to trafficking that would not result in a guilty verdict and that Counsel's strategy was helpful to the Applicant's defense, not prejudicial. This Court finds the Applicant has failed to carry his burden of proving Counsel provided ineffective assistance of counsel for the statements he made at trial during closing argument.

(Doc. # 23-2 at 175-176).

As set forth above, the PCR court found trial counsel's testimony credible as to the reasons he outlined for giving the closing argument that Petitioner now contests. Further, the PCR court found that trial counsel's closing remarks were not a concession of guilt. Rather,

19

the PCR court found that trial counsel's closing remarks were part of his trial strategy to provide the jury with an alternative to finding Petitioner guilty of trafficking and therefore not subject to a twenty-five year sentence. The PCR court further indicated that trial counsel's trial strategy was valid in light of the testimony of Officer Euper and that trial counsel's trial strategy was helpful to Petitioner's defense, not prejudicial. The PCR courts findings were not an unreasonable determination of facts.

Also, courts are instructed not to second guess an attorney's trial strategy and tactics. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir.1977); Stamper v. Muncie, 944 F.2d 170 (4th Cir.1991). Where counsel articulates valid reasons for employing a certain trial strategy, such conduct is not ineffective assistance of counsel. See Daniels v. Lee, 316 F.3d 477, 491 (4th Cir.2003). "Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland v. Washington, 466 U.S. at 689.

The PCR court, applying the deferential standard for evaluating strategy decisions by trial counsel, found trial counsel not ineffective.  Its decision was not contrary to or an unreasonable application of applicable Supreme Court precedent. See Strickland v. Washington, 466 U.S. at 689 (". . . a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

20

perspective at the time). Because of the difficulties inherent in making the evaluation, a court

must ". . . indulge a strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance; that is, the defendant must overcome the presumption.

. . ." Id. The PCR court decision also was not based on an unreasonable determination of the

facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. §

2254(d)(1) & (2). Although Petitioner now disagrees with trial counsel's trial strategy, he

fails to assert any plausible facts to overcome the presumption that trial counsel's approach

was a sound trial strategy under the circumstances. Rose v. Lee, 252 F.3d 676, 693 (4th

Cir.2001) (holding "[w]hen counsel make a reasonable strategic choice based upon an

investigation of the facts, this Court must defer to that strategic choice.").

Accordingly, it is recommended that Ground One be denied and dismissed.


## C.  GROUND TWO (PROCEDURALLY DEFAULTED CLAIMS)

In Ground Two, Petitioner argues ineffective assistance of counsel  and asserts three

claims that he acknowledges were not presented to the state court and that are "procedurally

defaulted." While Petitioner submits the claims in Ground Two were not raised in the PCR

and thus not ruled on by the state court, he contends that the Supreme Court case of Martinez

v. Ryan, 132 S. Ct. 1309 (2012) enables him to overcome his procedural default of these

claims. (Doc. # 1-2 at 3).

In  Martinez,  the Supreme Court established a "limited qualification" to the rule in

Coleman v. Thompson, 501 U.S. at 722, that any errors of PCR counsel cannot serve as a

basis for cause to excuse a petitioner's procedural default of a claim of ineffectiveness of trial

counsel.  Martinez v. Ryan, 132 S. Ct. at 1319.  The Martinez Court held that inadequate

assistance of counsel "at initial-review collateral review proceedings may establish cause for

a prisoner's procedural default of a claim of ineffective assistance at trial." Id. at 1315.  In

describing its holding in Martinez, the Supreme Court has stated that:

> We . . . read Coleman as containing an exception, allowing a
> federal habeas court to find "cause," thereby excusing a
> defendant's procedural default, where (1) the claim of
> "ineffective assistance of trial counsel" was a "substantial" claim;
> (2) the "cause consisted of there being "no counsel" or only
> "ineffective" counsel during the state collateral review
> proceeding; (3) the state collateral review proceeding was the
> "initial proceeding in respect to the
> "ineffective-assistance-of-trial-counsel claim"; and (4) state law
> requires that an "ineffective assistance of trial counsel [claim] .
> . . be raised in an initial-review collateral proceedings."

Trevino v. Thaler, 133 S. Ct. 1911 (2013) (citing Martinez, 132 S. Ct. at 1318–19); see also

Sexton v. Cozner, 679 F.3d 1150, 1159 (9th Cir. 2012) (summarizing the Martinez test to

require the following: "a reviewing court must determine whether the petitioner's attorney in

the first collateral proceeding was ineffective under Strickland, whether the petitioner's claim

of ineffective assistance of trial counsel is substantial, and whether there is prejudice").

　　　　To establish cause under Martinez, Petitioner must demonstrate (1) that his PCR

counsel was ineffective under Strickland and (2) that "the underlying ineffective assistance-

of-counsel claim is a substantial one." Martinez, 132 S. Ct. at 1318.  Therefore, Petitioner

must show that PCR counsel's failure to raise this issue at PCR or to file a Rule 59 motion

was "objectively unreasonable, and that, but for his errors, there is a reasonable probability

that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter." Sexton v. Cozner, 679 F.3d at 1157; see also Williams v. Taylor, 529 U.S. at 391 (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective assistance-of-counsel claims"); Strickland v. Washington, 466 U.S. at 68 (stating to demonstrate ineffective assistance of counsel, a petitioner must show that (1) counsel's errors were so serious that her performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution and (2) petitioner was prejudiced as a result).

Respondent submits that Petitioner's claims in Ground Two are procedurally barred as Petitioner cannot fulfill Martinez's requirements to overcome the procedural default.

**1. Ground Two (1)**

Petitioner asserts that trial counsel was ineffective for failing to argue pursuant to Banks v. Dretke[5], 540 US. 668 (2004) that the State committed a Brady violation by "[n]ot disclosing the name of the [informant] who would establish this residence was a drug location []and his ongoing favorable treatment by state." (Doc. #1-2 at 3). This issue was procedurally defaulted when Petitioner failed to pursue this claim at the PCR hearing. However, Petitioner maintains that Martinez enables him to overcome the default. Respondent submits that Petitioner cannot meet his burden under Martinez of proving circumstances that

---

[5] In Banks v. Dretke, the Supreme Court held that "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Banks v. Dretke, 540 U.S. at 691.

excuse procedural default of this claim.  Further, Respondent submits that this is a meritless claim because the alleged informant was not involved in any transaction leading directly to Petitioner's arrest.   In his response in opposition to Respondent's motion for summary judgment , Petitioner generally asserts  that a genuine issue of material fact exists and that he is entitled to an evidentiary hearing.  (Doc. #33 at 1).

"A Brady violation occurs when the government fails to disclose evidence materially favorable to the accused." Youngblood v. West Virginia, 547 U.S. 867, 869, (2006) (per curiam).  Evidence is material if there is a reasonable probability "that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Id. at 870 (quoting Strickler v. Greene, 527 U.S. 263, 280 (1999)).  "An individual asserting a Brady violation must demonstrate that evidence: (1) favorable to the accused; (2) in the possession of or known by the prosecution; (3) was suppressed by the State; and (4) was material to the accused's guilt or innocence or was impeaching."  Riddle v. Ozmint, 631 S.E.2d 70, 44 (2006); Kyles v. Whitley, 514 U.S. 419 (1995).

In the underlying matter, Respondent submits that Petitioner has neither alleged nor explained how disclosure of the informant's name would constitute material exculpatory evidence under Brady.  The law is well-settled that a criminal defendant bears the burden to make a showing in support of disclosure of a confidential informant's identity. Rugendorf v. United States, 376 U.S. 528, 534-35 (1964).  Here, Petitioner offers only an unsupported conclusory allegation in his petition that trial counsel erred in not asserting a Brady violation due to the prosecution's failure to disclose the identity of a confidential informant leaving the

24

court to speculate on the materiality of the requested information. In response to Respondent's motion for summary judgment on this issue, Petitioner merely restates the same conclusory allegation set forth in his petition. "[C]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief". James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).[6]

As such, Petitioner has not shown that his PCR counsel was ineffective under Strickland or that the underlying ineffective assistance of trial counsel claim is substantially meritorious to overcome the default. Accordingly, Petitioner has failed to establish cause for the procedural default of the claim presented in Ground Two (1) pursuant to Martinez, supra. Therefore, it is recommended that this claim be denied and dismissed.

## 2. Ground Two (2)

In Ground Two (2), Petitioner alleges ineffective assistance of counsel due to trial counsel's failure to argue that the State committed a Brady violation for not disclosing an alleged "deal" between Deas and the State. Petitioner argues that the information regarding this deal was "vital impeachment" information and that counsel's failure to file a motion seeking this information amounted to "gross ineffective assistance of counsel". (Doc. # 1-2

---

[6] Not only does Petitioner fail to show the trial judge would have had a basis to grant the motion to reveal the identity of the confidential informant, see note 16, infra., but he fails to show "not merely that the errors at. . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Murray v. Carrier, supra, quoting United States v. Frady, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); see also Casey v. Stevenson, 2015 WL 5998650 (D.S.C. 2015)("To show actual prejudice, the petitioner must demonstrate more than plain error").

at 3).   Petitioner further argues that the fact that charges against Deas were reduced from trafficking to possession and that she received a six-month sentence after testifying against Petitioner is circumstantial evidence that a deal existed.  Although Ground Two (2) was procedurally defaulted when Petitioner failed to pursue this claim at the PCR hearing, Petitioner maintains that <u>Martinez</u> establishes cause for the default.

In moving for summary judgment, Respondent submits that Petitioner cannot meet his burden under <u>Martinez</u> to excuse the default.  Respondent argues that the record does not support Petitioner's allegation that the State withheld information about a deal that it had allegedly made with Deas, and there is no evidence of a deal.

In opposing Respondent's motion for summary judgment, Petitioner generally asserts that a genuine issue of fact exists and that Deas' receipt of a six-month sentence is "circumstantial evidence" that she received a deal.  (Doc. # 33). Petitioner also contends, without explanation, that "PCR counsel should have raised these Dead Bang Winner <u>Banks. v. Reynolds</u> (4th Cir.)"[7].  (Doc. # 33 at 3).

In order to overcome the default, <u>Martinez</u> requires Petitioner to demonstrate that the underlying claim of ineffective assistance of plea counsel is substantial or has merit. <u>See Martinez v. Ryan</u>, 132 S. Ct. at 1318.   In the instant action, Petitioner offers no evidence, other than his own conclusory allegations to support his contention that trial counsel and PCR

---

[7] In <u>Banks v. Reynolds</u>, 54 F.3d 1508, 1515 (10th Cir.1995) the court indicated that an appellate counsel's failure to raise the one issue that would have been a "dead-bang winner" renders his assistance constitutionally ineffective.   "A 'dead bang winner' is an issue which was obvious from the trial record." <u>Meade v. Lavigne</u>, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

counsel were ineffective for not raising an issue regarding the alleged deal between Deas and the State.  Further, Petitioner's suggestion that this was a "Dead Bang Winner" issue is not supported by the record.

At the PCR hearing, trial counsel testified that he had filed <u>Brady</u> and Rule 5 SCRCrimP discovery requests and that he had reviewed the State's responses to these requests with Petitioner. (Doc. #23-2 at 139).  Further, trial counsel testified that Petitioner was aware that Ms. Deas was a potential witness in his trial, that the case was scheduled for trial on three occasions because it had to be continued on two occasions due to Ms. Deas being rushed to the hospital the first time with complications from a pregnancy, and the second time she was rushed to the hospital to give birth. (Doc. #23-2 at 134-135). Counsel testified that it was Petitioner's position at all times that Ms. Deas was going to testify that the drugs belonged to her and not Petitioner and that he knew nothing about the drugs. However, that was not Deas' testimony. Trial counsel indicated that he had and knew all about her statements and cross-examined her on them. (Doc. #23-2 at 136). Counsel testified "But we had everything. It was very clear that this was a case where she just flipped on him. And it was–I mean there was no question about the fact she had the drugs on her. And her testimony was the one thing that could sink him, so to speak, if the jury chose to believe her. Because he had absolutely no drugs on him." (Doc. #23-2 at 136-37).

A review of the trial transcript reveals that upon cross -examination, trial counsel asked Ms. Deas what was her "deal" with the State. (Doc. #23-3 at 230). Ms. Deas responded that she did not have a deal but was out of jail on bond with no agreement as to a sentence or

charge reduction. (Doc. #23-3 at 230-31). Thus, the record before the court reflects that trial counsel filed <u>Brady</u> motions, and there is no evidence before the court that the state withheld any type of "deal" entered with Ms. Deas. As such, Petitioner has not shown that his PCR counsel was ineffective under <u>Strickland</u> or that the underlying ineffective assistance of trial counsel claim is substantially meritorious to overcome the default. Accordingly, Petitioner has failed to show that his underlying ineffective assistance of counsel claim was substantial, and thus cannot establish cause for the procedural default of the claim presented in Ground Two (2) pursuant to <u>Martinez</u>, <u>supra</u>. Accordingly, it is recommended that this claim be denied and dismissed.

### 3. Ground Two (3)

In Ground Two (3), Petitioner asserts an ineffective assistance of counsel claim due to trial counsel's failure to request a curative instruction after the court sustained a hearsay objection and due to his failure to request that the record be stricken. Respondent argues that Petitioner cannot meet his burden under <u>Martinez</u> to excuse the procedural default of this claim.

As an initial matter, "Petitioner's Traverse to The State Motion for Summary Judgment" does not specifically address Ground Two (3). As Petitioner has elected to not respond to Respondent's argument in support of summary judgment on Ground Two (3), the undersigned finds Petitioner has waived or conceded this claim. <u>See Owens v. Warden of Perry Correctional Institution</u>, C.A. No. 5:14-cv-03685-RBH, 2015 WL 3871195, (D.S.C. June 23, 2015) citing <u>Petrucelli v. Dep't of Justice</u>, No. 11–1780 (RBW), 2014 WL 2919285,

28

at *7 (D.D.C. June 27, 2014) citing <u>Maydak v. DOJ</u>, 579 F.Supp.2d 105, 107 (D.D.C. 2008)(holding that lack of response to a point raised in a motion for summary judgment amounts to a concession of that point). Accordingly, it is recommended that Respondent's motion for summary judgment be granted as to Ground Two (3).

In the alternative, this issue is procedurally defaulted, and Petitioner has failed to establish cause under <u>Martinez</u> to overcome the default. This issue was not raised at the PCR evidentiary hearing, nor was it addressed in the PCR court's order of dismissal, and PCR counsel did not file a Rule 59 motion raising this issue.  Thus, it is procedurally barred from consideration in this habeas action. <u>See Coleman</u>, <u>supra</u>.  To the extent Petitioner claims that <u>Martinez v. Ryan</u>, <u>supra</u>, allows him to overcome his procedural default,  the claim fails.  As previously set forth, to demonstrate cause under <u>Martinez</u>,  Petitioner  must demonstrate (1) that his PCR counsel was ineffective under <u>Strickland</u> and (2) that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one." <u>Martinez</u>, 132 S.Ct. at 1318.Therefore, Petitioner must show that PCR counsel's failure  to raise this issue at PCR or to file a Rule 59(e) motion was "objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter." <u>Sexton</u>, 679 F.3d at 1157; <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 391, 120 S. Ct. 1495, 146 L. Ed.2d 389 (2000) (stating that "the <u>Strickland</u> test provides sufficient guidance for resolving virtually all ineffective assistance-of-counsel claims"); <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984) (stating to demonstrate ineffective assistance of counsel, a petitioner

must show that (1) counsel's errors were so serious that her performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution and (2) petitioner was prejudiced as a result).

Petitioner has not shown that his PCR counsel was ineffective under Strickland and that the underlying ineffective claim of trial counsel is substantially meritorious to overcome the procedural bar. The testimony Petitioner objects was Officer Matthew Euper's response when asked why the location was under surveillance that "we received information about a drug dealer on two occasions." (Tr. 54-55). The court agrees with the State that the statement was not hearsay based on State law and would not have called for a curative instruction.[8] Evidence is not hearsay unless it is an out of court statement offered to prove the truth of the matter asserted. See Caprood v. State, 338 S.C. 103, 525 S.E.2d 514 (2000) citing State v. Brown, 317 S.C. 55, 63, 451 S.E.2d 888, 894 (1994). An out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken. Id. "In Brown, the Court held police officers' testimony about complaints they had received in the neighborhood prior to setting up their surveillance was admissible for the nonhearsay purpose of explaining why officers began their surveillance of defendant's apartment. The officers' statements here were similar to those in Brown in that in both cases the officers were explaining their actions in pursuing the defendants and the statements were not offered for their truth." Id. at 111. Accordingly, Petitioner cannot demonstrate that the

---

[8] The trial judge sustained the objection.

underlying ineffective assistance of counsel claim is substantial, nor can he show PCR counsel was ineffective for failing to raise the issue at the PCR hearing.  See Martinez, supra.

## VII. CONCLUSION

As set out above, a review of the record indicates that the petition should be dismissed.  For the reasons set forth herein, a review of the record indicates that this petition should be dismissed.  Therefore, it is RECOMMENDED that Respondent's motion for summary judgment (doc. #23) be granted and the petition be dismissed without an evidentiary hearing.


Respectfully submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

November 13, 2016
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**